UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-06-GWU

JAMES MURPHY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-06 Murphy

> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

07-06 Murphy

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

07-06 Murphy

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

07-06 Murphy

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

07-06 Murphy

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, James Murphy, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of headaches, cervical degenerative disc disease (status post neck surgery in June, 2001), right elbow epicondylitis (status post surgery September, 2005), Meniere's syndrome, and affective and somatoform disorders. (Tr. 18). Nevertheless, based in part on the testimony of a medical expert (ME) and a Vocational Expert (VE), the ALJ determined that Mr. Murphy retained the residual functional capacity to perform his past relevant work as a computer programmer and systems analyst, and therefore was not entitled to benefits. (Tr. 20-24). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff could perform any jobs if he were limited to "sedentary" level exertion with occasional use of the right upper extremity and occasional power gripping, a need to avoid heights, dangerous machinery, twisting, and bending. He was able to understand and remember instructions of varying complexity, could sustain attention to complete routine tasks and adapt to routine changes, and could tolerate coworkers and supervisors in a low stress, non-public setting. (Tr. 472-6). The VE responded that the plaintiff could continue to function in his former job as a computer analyst and technical support person. (Tr. 474). On the other hand, if the plaintiff were limited

07-06 Murphy

to the restrictions given by his treating physician, Dr. Brad Quatkemeyer, there would be no jobs that he could perform. (Tr. 475).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to extreme pain in his neck, which persisted despite having surgery, poor concentration, bad temper, passing out spells, and instability in his legs which caused him to fall. (Tr. 93). At the administrative hearing, Mr. Murphy testified that he had a long history of neck pain, and although neck surgery in June, 2001 had helped for some time, he had been forced to stop working in July, 2003 due to severe pain and headaches. (Tr. 436-8). He was rear-ended in February, 2004, causing his neck symptoms to worsen. (Tr. 441). He frequently felt dizzy and his ear, nose and throat physician, Dr. Woodruff, had advised him to use a cane. (Tr. 440-1). Due to the dizziness and a knee problem, he fell frequently, approximately once a week. (Tr. 448-50, 459). He also had surgery on the right elbow and had difficulty using his right arm. (Tr. 439, 443-4). Despite the surgery, he could not straighten his right arm out. (Tr. 448). He was on Prozac for his bad temper and could not perform multiple tasks any more without getting frustrated and depressed. (Tr. 450). His treating family physician, Dr. Quatkemeyer, was prescribing the Prozac as well as a Duralgesic patch for pain. (Tr. 451). However, he testified that he lived on a 55 acre farm and he and his wife

07-06 Murphy

both owned a horse which they took care of, including cleaning the stalls a little bit at a time. (Tr. 456-8). Despite his frequent falling episodes, he admitted that he had never gone to the emergency room and had had no major injuries. (Tr. 459).

Medical records in the transcript confirm that Mr. Murphy underwent surgery for a herniated cervical disc in June, 2001, prior to his alleged onset date. (Tr. 162-4). Office notes from Dr. Quatkemeyer after the alleged onset date record complaints of pain but very little in the way of objective findings. (Tr. 242-66). On May 7, 2004, Dr. Quatkemeyer completed a physical medical assessment form limiting Mr. Murphy to lifting no more than five pounds and less than full-time walking, sitting, and standing due to degenerative disc disease and chronic neck and low back pain. There were also restrictions on postural activities, reaching, and on working around heights, moving machinery, temperature extremes, and vibration. (Tr. 237-40). Dr. Quatkemeyer also wrote a letter dated June 1, 2004 stating that Mr. Murphy had been followed for chronic neck, back, and degenerative disc disease since June, 2001, and had also been involved in a motor vehicle accident on February 20, 2004. (Tr. 236). An MRI on March 6, 2004 had shown "shallow subligamentous disc protrusions at several levels." Dr. Quatkemeyer stated that the plaintiff would "continue to be on disability and will continue to have residual pain." (Id.). Further office notes from Dr. Quatkemeyer continue to reflect complaints of pain, but provide almost nothing in terms of objective findings. (E.g., Tr. 369). He referred his patient to Dr. Richard Hoblitzell for evaluation of right elbow tendonitis.

07-06 Murphy

(Id.).¹  Dr. Quatkemeyer completed another functional capacity assessment on May 27, 2005 giving Mr. Murphy's problems as degenerative disc disease, symptoms of neck and low back pain, numbness in both arms, difficulty walking and imbalance. (Tr. 370).  Clinical findings supporting his complaints were an MRI of the cervical spine showing disc protrusions and degenerative disc disease.  He limited Mr. Murphy to never lifting any weight, sitting or standing only five minutes continuously and less than two hours total in an eight-hour day, never looking down, rarely turning his head left or right, looking up, or holding his head in a static position, never performing most postural activities, and grasping, manipulating, or reaching overhead only ten percent of the time.  (Tr. 370-4).

Other medical evidence includes an emergency room report from July, 2003 at which the plaintiff was seen after becoming light-headed and dizzy at work.  (Tr. 390).  No abnormalities were found on examination, but the plaintiff checked himself out of the hospital against medical advice.  (Tr. 391).  An echocardiogram in July, 2003 showed only mild mitral regurgitation, and was otherwise normal.  (Tr. 313). A CT scan of the head in October, 2004 was normal (Tr. 309), consistent with earlier CT scans and MRIs of the head.  (Tr. 321, 331, 341).  Later the same year, he was diagnosed with allergies and given immunotherapy.  (Tr. 171-2).  An MRI of the lumbosacral spine in July, 2003 was normal, as was another lumbosacral spine MRI

---

¹The physician noted that Prozac was working well for the plaintiff's depression and he had no problems with the medication.  (Tr. 369).

07-06 Murphy

in September, 2004. (Tr. 310, 317). The cervical spine MRI cited by Dr. Quatkemeyer from May 6, 2004 did show "shallow" disc protrusions at several levels, but the radiologist noted that there was no significant spinal stenosis or obvious forminal narrowing, and there were no new findings compared to cervical spine MRIs prior to the motor vehicle accident. (Tr. 312, 327, 332).

Dr. Richard Hoblitzell evaluated the plaintiff for his right elbow and left knee pain complaints in 2005, and performed a procedure in September, 2005 to repair chronic lateral epicondylitis of the right elbow. (Tr. 376, 384-5). He referred his patient to Dr. Joel Sorger, another orthopedist, for evaluation of what appeared to be an "osteoid osteotomy" in the right knee. (Tr. 376-7). However, Dr. Sorger obtained an MRI of the left knee which he concluded did not represent an osteoid osteoma, and was most likely a small degenerative cyst. (Tr. 386-7). Dr. Sorger decided not to perform any surgery. (Tr. 376, 419-20). No functional restrictions are suggested.

Finally, Mr. Murphy was evaluated by Dr. Steven Woodruff, an ear, nose and throat specialist for complaints of dizziness. An MRI of the brain showed only mild changes, and Dr. Woodruff interpreted it as normal. (Tr. 398-9). He recommended that his patient reduce caffeine and use Valium for acute episodes of dizziness lasting more than five minutes. (Tr. 398). The plaintiff reported, however, that this was not effective, and Dr. Woodruff prescribed another medication, but did not list any functional restrictions. (Id.).

Case: 6:07-cv-00006-GWU   Doc #: 9   Filed: 11/14/07   Page: 12 of 17 - Page ID#: 65

07-06 Murphy

Psychologically, although the patient received Prozac from Dr. Quatkemeyer, he testified that he had not received any mental health treatment at the time of the January 5, 2006 administrative hearing, although he was scheduled to see a psychiatrist in the future for complaints of post traumatic stress disorder related to Army service in 1976. (Tr. 451). The only examining mental health source was Dr. Laura B. Little, a licensed psychologist, who examined the plaintiff on January 19, 2004 and diagnosed an adjustment disorder with depressed mood, a pain disorder associated with psychological factors and a general medical condition, alcohol abuse in partial remission, and anti-social traits. (Tr. 179).[2] Dr. Little assessed a Global Assessment of Functioning (GAF) score of 55, representing moderate symptoms per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34. The psychologist concluded that Mr. Murphy appeared to have an adequate ability to understand, remember, and carry out simple <u>and</u> <u>complex</u> instructions, although he was "mildly to moderately" impaired in his ability to sustain attention to simple, repetitive tasks and adapt to and tolerate the stress and pressures associated with day-to-day work activity, and "moderately" impaired in his ability to relate to others including fellow workers and supervisors. (Tr. 179-80) (emphasis

---

[2] The plaintiff informed Dr. Little that he frequently became intoxicated when he was in his 20s, but drank very occasionally at the present time. (Tr. 177). He had had some alcohol abuse treatment in prison, where he had served 17 years for second degree murder. (Id.).

07-06 Murphy

added).[3] State agency psychologists who reviewed the evidence felt that Mr. Murphy would have no more than a moderate limitation in his ability to maintain attention and concentration, work with others, and interact appropriately with the general public. (Tr. 205-7, 231-33).

At the administrative hearing, the ALJ received testimony from the ME, Dr. Arthur Lorber, an orthopedist. Dr. Lorber summarized Mr. Murphy's treatment and concluded that while he did not meet the Commissioner's Listing of Impairment 1.04A for his neck condition, he would recommend that he be limited to sedentary exertion. (Tr. 460-1). Due to his treatment for tennis elbow and his diagnosis of fusion and degenerative disc disease in the neck, it was reasonable to limit the use of the right elbow and right arm and he advised no frequent power gripping. (Tr. 463-6). He did not think that the knee cyst was operable. (Tr. 467). Side effects from the medication, such as drowsiness and limitation of attention and concentration were possible but not a certainty and he did not recall that the plaintiff made any complaints about his medication. (Tr. 467-8).

The ALJ rejected Dr. Quatkemeyer's restrictions, citing the lack of objective findings on testing and physical examinations. (Tr. 22). The ALJ also cited the fact that Dr. Quatkemeyer was a family physician rather than a specialist. (Id.). The

---

[3]The plaintiff had actually denied having difficulty getting along with coworkers or supervisors to Dr. Little although it appeared that he did have some problem due to irritability in his most recent position according to the psychologist. (Tr. 178).

13

07-06 Murphy

plaintiff asserts on appeal that Dr. Quatkemeyer's opinion as a treating source should be controlling. It is the longstanding rule, however, that even a treating physician's opinion is not binding if it is not supported by objective findings, and if there is substantial evidence to the contrary. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Although Dr. Quatkemeyer had a long treating relationship with the plaintiff, and had ordered numerous tests such as MRIs, CT scans, and x-rays, his office notes are virtually devoid of any objective findings. Many of the objective test results, as noted above, were negative or essentially negative, and as previously noted, the 2004 MRI of the cervical spine cited by Dr. Quatkemeyer as supporting extreme limitations was said to show no significant changes from previous testing, after which the plaintiff had been able to work. Nor is it entirely clear why the plaintiff would have had the extreme limitations on sitting and severe low back pain cited by physicians in view of an unremarkable MRI of the lumbosacral spine. Thus, there was a reasonable ground to question the adequacy of the physician's reasoning. Dr. Lorber, the ME, had the benefit of a review of the entire record and clearly stated the reasons for his difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Therefore, taken as a whole, there is substantial evidence to support the ALJ's physical functional capacity assessment.

The plaintiff argues that his past jobs as a computer systems analyst, computer programmer, and technical support specialist would be inconsistent with his limitations in maintaining attention and concentration, but Dr. Little had referred

14

to his limitations as being "mild to moderate" (Tr. 179), terms that were undefined. The VE assumed, in his answer to the hypothetical question, that the plaintiff had a "moderate" limitation in concentration, but opined that, while it might make Mr. Murphy slower, he felt that he would be able to perform the past relevant jobs. (Tr. 472). Since there is no clear limitation in the evidence to more than a "moderate limitation" in this area, the VE's testimony was adequate in this regard.

In another significant respect, however, the VE's testimony was at least partially deficient. As the plaintiff points out, the hypothetical question limited him to occasional use of the right upper extremity. While the VE testified that Mr. Murphy could do three of his past relevant jobs despite this limitation because they did not require "a steady stream of use with the right hand for [typing]" (Tr. 474), the <u>Dictionary of Occupational Titles</u> (DOT) indicates that the jobs of computer programmer, Section 030.162-010, and computer systems hardware analyst, Section 033.167-010, both involve "frequent[ly]" reaching and handling. This conflicts with the VE's testimony, and the VE also specifically stated that there was no significant discrepancy between his testimony and the DOT. (Tr. 476). Social Security Ruling (SSR) 00-4p states that where there is an apparent unresolved conflict between the DOT and evidence given by a VE, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE's testimony. SSR 00-4p, p. 2. The ruling goes on to state that the ALJ can accept contrary evidence

07-06 Murphy

from the VE, but the reasonable explanation must first be elicited.  In the present case, the VE clearly believed that there was no discrepancy.[4]

The plaintiff challenges the reliability of the VE's testimony based on the VE's mistaken belief that there was no inconsistency with the DOT.

In a recent unpublished case, the Sixth Circuit noted a split of authority among courts as to whether "claimants should [or should] not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error."  Lancaster v. Commissioner of Social Security, 228 Fed. Appx. 563, p. 10 (6th Cir. 2007).  The Sixth Circuit suggested that a "middle ground approach" was more "straightforward," although determining that the issue was not critical to the case at bar.

In the present case, although there was an inconsistency, the VE testified at length regarding his belief that the jobs of computer programmer and systems analyst could be performed by a person limited to occasional use of his right upper

---

[4] The VE identified a third past relevant job to which the plaintiff could return, "technical support specialist," DOT Section 033.162-018.  (Tr. 471).  The DOT states that this job only "occasionally" requires reaching and handling, consistent with the hypothetical question.  It is inconsistent with the hypothetical question, however, in that the DOT describes it as a "light" level job, rather than sedentary.  The VE noted at two points in his testimony that the job was listed as light (Tr. 471, 477), and did not specifically state that there would be positions at the sedentary level.  The ALJ relied only upon the computer programmer and systems analyst jobs in finding that Mr. Murphy could return to his past relevant work.  (Tr. 23).

07-06 Murphy

extremity. (Tr. 474, 477-9). There is longstanding authority in this circuit that an ALJ may accept the testimony of a VE which differs from the DOT. <u>Conn v. Secretary of Health and Human Services</u>, 51 F. 3d 607, 610 (6th Cir. 1995). Therefore, the court concludes that under the facts of the present case, any error regarding SSR 00-4p was harmless. The VE's testimony clearly expresses his opinion on the subject, and a remand merely to force him to admit that the DOT is inconsistent would be pointless.

For reasons stated in the Commissioner's brief at pp. 11-12, the plaintiff's arguments regarding the evaluation of his subjective complaints of pain are without merit.

The decision will be affirmed.

This the 14th day of November, 2007.

Signed By:

<u>G. Wix Unthank</u>

United States Senior Judge